38 F.3d 1213
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
David Zimmerman HESS, Jr., Defendant-Appellant.
 No. 93-5799.
 United States Court of Appeals, Fourth Circuit.
 Submitted: July 26, 1994.
Decided: Oct. 14, 1994.
 
 Appeal from the United States District Court for the District of South Carolina, at Charleston. David C. Norton, District Judge. (CR-92-15)
 David P. McCann, MCCANN & MCCANN, Charleston, SC, for Appellant. J. Preston Strom, Jr., United States Attorney, Robert H. Bickerton, Assistant United States Attorney, Charleston, SC, for Appellee.
 D.S.C.
 AFFIRMED.
 Before WIDENER and WILLIAMS, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 David Zimmerman Hess, Jr., pled guilty to conspiracy to possess with intent to distribute and to distribute marijuana, 21 U.S.C.A. Sec. 846 (West Supp.1994). He appeals the district court's denial of his motion to withdraw his guilty plea. He also contests the district court's determination of the amount of marijuana attributable to him as relevant conduct, United States Sentencing Commission, Guidelines Manual Secs. 1B1.3, 2D1.1 (Nov.1992), its finding that he was a manager or supervisor in the offense, U.S.S.G. Sec. 3B1.1(b), and its denial of an adjustment for acceptance of responsibility, U.S.S.G. Sec. 3E1.1. We affirm.
 
 
 2
 Hess was one of seventeen defendants originally charged in a thirteen-count superseding indictment with conspiring to bring large amounts of marijuana to South Carolina from Texas between 1980 and 1991. The operation was headed by Albert Dangerfield, Sr., and included many members of his family. After 1985, the marijuana was transported principally in pickup trucks. Often the trucks used had gas tanks modified to hold the marijuana while the fuel for the truck was carried in a separate tank. Also charged was David Caceres, from whom the marijuana was bought in Texas. Charges were dismissed against one defendant and Patrick Dangerfield was acquitted of participation in the conspiracy. All the remaining defendants entered guilty pleas.
 
 
 3
 On October 13, 1992, the day scheduled for his trial, Hess pled guilty to the conspiracy count; his wife pled guilty to an information charging her with a pre-guideline offense. Hess met the same day with Drug Enforcement Agent Edward King for a short preliminary interview and admitted that he participated in the conspiracy during 1985 and again between 1989 and 1991. A second interview was scheduled but was cancelled by Hess in December 1992.
 
 
 4
 In January 1993, Hess moved to withdraw his guilty plea. At the first hearing on his motion to withdraw, Hess claimed that he was innocent and had pled guilty only to obtain favorable treatment for his wife. He further claimed that he had only recently received records of the hours he had worked in 1984-1985 and in 1988-1989, which he believed gave him an alibi defense.* The hearing was continued to allow the government to present evidence from Agent King about his interview with Hess on the day of his guilty plea. After a second hearing, the district court denied Hess's motion to withdraw, finding that he had not shown a fair and just reason for withdrawal under Fed.R.Crim.P. 32(d). Its decision is reviewed on appeal for abuse of discretion. United States v. Moore, 931 F.2d 245, 248 (4th Cir.), cert. denied, 60 U.S.L.W. 3261 (U.S.1991).
 
 
 5
 Factors considered in determining whether a defendant has shown a fair and just reason for withdrawing his guilty plea include (1) whether the defendant has offered credible evidence that his plea was not knowing or voluntary, (2) whether the defendant has credibly asserted his legal innocence, (3) whether there has been a delay between the entering of the plea and the filing of the withdrawal motion, (4) whether the defendant had close assistance of competent counsel, (5) whether withdrawal will cause prejudice to the government, and (6) whether it will inconvenience the court and waste judicial resources. Id.
 
 
 6
 Hess asserted that his guilty plea was involuntary because his plea was part of a package deal which was intended to benefit his wife, from whom he had since separated. However, a plea made in return for leniency to a third person is not necessarily involuntary. United States v. Morrow, 914 F.2d 608, 613-14 (4th Cir.1990). Hess made no showing that his plea was not knowingly and willingly made. The district court found that his assertion of innocence was counterweighed by his assertion of guilt at the time he entered his plea and his admission of guilt in his initial interview with Agent King.
 
 
 7
 Eight weeks after his guilty plea, Hess's attorney cancelled his debriefing with Agent King and said he would not be available in the future. Over a month later, Hess finally filed a motion to withdraw his guilty plea. The district court found that the delay weighed against Hess, and that the government would be prejudiced by the withdrawal of Hess's guilty plea because his wife benefited from his plea and the government was bound to honor her agreement. Hess did not contend that he had lacked the assistance of competent counsel.
 
 
 8
 Because all the factors weighed against Hess or were evenly balanced, and none weighed in his favor, we find that the district court did not abuse its discretion in denying him leave to withdraw his guilty plea.
 
 
 9
 In his plea agreement, Hess stipulated that he was involved with 2500 kilograms of marijuana; however, he reserved the right to contest the amount at sentencing. The probation officer recommended a based offense level of 32 (1000-3000 kg marijuana) under guideline section 2D1.1, based on the government's information that Hess was personally involved with at least 1000 kilograms.
 
 
 10
 Hess objected that less than 1000 kilograms should be attributed to him. He testified at the sentencing hearing that he made eight trips to Texas in 1985, two with Dangerfield and six with Ray, and brought back around fifty pounds of marijuana on each trip. He testified that he made four or five trips in 1989, and six or seven trips in 1990, again bringing back about fifty pounds of marijuana each time. He thus admitted involvement with about 1000 pounds, or 453 kilograms of marijuana. Hess also admitted that in 1989-1990 each truckload of marijuana transported to South Carolina was unloaded at a marina owned by his stepfather to which he had access. If the marina was closed when the truck arrived, the truck was parked at his house until it could be unloaded at the marina.
 
 
 11
 The government had the burden of proving by a preponderance of the evidence that at least 1000 kilograms was attributable to Hess as relevant conduct. U.S.S.G. Sec. 1B1.3; United States v. Powell, 886 F.2d 81, 85 (4th Cir.1989). The government called as witnesses Agent King, who had debriefed many of Hess's co-defendants, and Joel Ray, an unindicted co-conspirator who drove with Hess to Texas both in 1985 and in 1989-1990. The government also introduced portions of testimony given by Albert Dangerfield, Sr., and David Caceres at the trial of Dangerfield's son, Patrick. The testimony of Ray, Dangerfield, and Caceres differed somewhat as to the frequency of trips to Texas during the periods that Hess and Ray were driving, and the amounts purchased there. However, taken as a whole, the government's evidence established Hess's involvement with more than 1000 kilograms of marijuana.
 
 
 12
 Ray testified that he became involved in the conspiracy in 1985 when Hess offered him $500 to accompany Hess on a drive to Texas. He made five trips to Texas with Hess in 1985, but did not know the amounts purchased because Hess alone met with Caceres. He said the round trip took two and a half days. He said he then switched at Hess's suggestion to living in a trailer which served as a stash house. Ray said he received money from Hess every month for the rent and that Hess made eighteen to twenty deliveries of marijuana to the trailer between late spring or early summer of 1985 and November 1985. There was a hiatus in the conspiracy around this time. Ray temporarily moved to another state. Hess and Albert Dangerfield, Sr., had a falling out, and Dangerfield was arrested on drug charges in January 1986 and served some time in prison.
 
 
 13
 Ray estimated that Hess's first delivery to the stash house was about 200 pounds and that two or three later deliveries were in the same amount. The white pickup truck being used at the time had two gas tanks modified to carry marijuana. Ray said on the largest deliveries both tanks were full and in addition there were two trash bags full of marijuana. The rest of the deliveries were around 100 pounds each. Ray helped unload and bag the marijuana when it arrived. He sold some of it to Buddy Mattingly, a friend of his. Mattingly testified at Patrick Dangerfield's trial that he bought forty pounds of marijuana from Ray almost every week during the six months before his arrest in November 1985. Hess denied making any deliveries to Ray at the trailer stash house. This was his principal disagreement with Ray.
 
 
 14
 Albert Dangerfield testified at his son's trial that trips to Texas were made once or twice a month during 1985, that the white pickup was modified halfway through the year to carry drugs in both tanks, and that with both tanks full the truck could hold 85-90 pounds of marijuana. Agent King testified that an unindicted co-conspirator, Dolly Ann Driggers Gore, saw Hess pay Caceres $98,000 on one occasion in 1985, which would have bought 245 pounds of marijuana at $400 per pound, the top price Caceres charged. Caceres testified that Hess drove for Dangerfield during 1985, that the white truck came to Texas about once a month, and that it could hold 35-60 pounds per tank.
 
 
 15
 Ray testified that in 1988 Hess asked him to begin driving again, and that he made 26-30 trips to Texas in 1989-1990 driving a truck with one modified gas tank which carried 60-70 pounds of marijuana. He said he was with Hess on fourteen of these trips. He said Hess always notified him when to go, even when he went alone, and that Hess provided the money for each purchase and paid him afterward. Dangerfield's testimony was that Hess and Ray drove to Texas twice a month in 1989-1990 and brought back 45-50 pounds on each trip. Caceres testified that in 1989-1990 Hess and Ray came every month except during the dry season (according to Hess this was February to May), and took home at most sixty pounds each time.
 
 
 16
 After hearing the evidence and argument, the district court determined that Hess was personally involved with more than 1000 kilograms. The court did not find it necessary to consider what amounts transported by his co-conspirators may have been reasonably foreseeable by him and therefore attributable to him as relevant conduct. See U.S.S.G. Sec. 1B1.3(a); United States v. Banks, 10 F.3d 1044, 1057 (4th Cir.1993), cert. denied, 62 U.S.L.W. 3755 (U.S.1994). On appeal, Hess claims that the district court relied entirely on Ray's testimony and that Ray's testimony was less reliable than Dangerfield's which, in his view, supported his own by giving lower estimates of the amount of marijuana transported.
 
 
 17
 We review the district court's determination of the amount of marijuana attributable to Hess under the clearly erroneous standard. Banks, 10 F.3d at 1057. Hess admitted transporting 700 pounds of marijuana in 1985. Because only Ray testified about Hess's deliveries to the stash house in 1985 and the district court did not specifically find that Ray's testimony about those deliveries was more credible than Hess's denial, that amount (approximately 2000 pounds) is problematic.
 
 
 18
 However, even if the amounts allegedly delivered to the stash house are excluded, the district court's determination was supported by the evidence. Ray's testimony concerning his 26-30 trips to Texas in 1989-1990 was corroborated by Dangerfield's testimony that trips were made two a month during that period. In fact, thirty trips over two years is considerably fewer than two a month. If thirty trips were made and an average of fifty-five pounds of marijuana purchased on each, the total would be 1650 pounds. Adding that amount to the 700 pounds Hess admitted transporting in 1985 yields a total of 2350 pounds or 1065 kilograms. Although, given the lack of precision in the various witness accounts, the district court was forced to estimate the amount properly attributable to Hess, we find that it did not clearly err in doing so.
 
 
 19
 Hess concedes that he managed the marina where marijuana was unloaded and packaged during 1989-90, as well as "other aspects" of the conspiracy. He argues that he was not a manager or supervisor because he was always subordinate to Dangerfield and was never more than a glorified courier. He urges us not to follow United States v. Chambers, 985 F.2d 1263, 1267-68 (4th Cir.), cert. denied 114 S.Ct. 107 (1993), which held that one who manages the property of a conspiracy may receive an enhancement under guideline section 3B1.1(b). Following Chambers, we find that the adjustment was not clearly erroneous, not only because Hess provided access to the marina but also because both Dangerfield and Ray testified that Hess recruited Ray and because Hess supervised Ray's activities both in 1985 and in 1989-1990.
 
 
 20
 Finally, we find no clear error in the district court's denial of an acceptance of responsibility reduction. United States v. Gordon, 594 F.2d 932, 937 (4th Cir.), cert. denied, 498 U.S. 846 (1990). Hess admitted at sentencing that he had perjured himself when he declared his innocence during the hearing on his motion to withdraw his guilty plea. He received a sentence enhancement for obstruction of justice under section 3C1.1. The acceptance of responsibility adjustment is not ordinarily available to a defendant who obstructs justice, U.S.S.G.
 
 
 21
 Sec. 3E1.1, comment. (n.4), and this is not an extraordinary case in which both adjustments might be warranted.
 
 
 22
 The conviction and sentence are therefore affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.
 
 
 
 *
 The records were not produced during the hearing on Hess's motion to withdraw his plea. They were submitted to the probation officer and produced in court at sentencing. The records included in the joint appendix show that Hess was employed from January 28, 1984, to April 18, 1985, and from August 8, 1988, to December 29, 1988, with the Wheelabrator Corporation. One of Hess's exhibits may have been omitted. Hess testified that he worked until August 1989